## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE ESTATE
OF STEPHANIE ANDERSON, deceased,

      Plaintiffs,

vs.                                                                      No. CIV 12-0605 JB/GBW

DENNY'S INC.,
BARRERAS ENTERPRISES, INC.,
FRANK H. BARRERAS, JUNE R. BARRERAS,
JUDITH A. BARRERAS,
JOSE HUMBERTO MELGAR-CABRERA,
MARVIN ANTONIO AGUILAR-LOPEZ
and PABLO DE LEON ORITZ,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Motion to Strike Notice of Completion of Briefing on Summary Judgment Filed by Denny's Inc., filed November 27, 2012 (Doc. 44)("Motion to Strike"). The Court held a hearing on January 7, 2013. The primary issues are: (i) whether the Court should strike Defendant Denny's, Inc., Notice of Completion of Briefing, filed November 26, 2012 (Doc. 43)("Notice of Completion of Briefing"), because Plaintiff Estate of Stephanie Anderson ("the Anderson Estate") has not yet responded to the Motion for Summary Judgment of Denny's, Inc., filed October 26, 2012 (Doc. 40)("Motion for Summary Judgment"); and (ii) whether the Court should allow the Anderson Estate an extension of time to respond to the Motion for Summary Judgment, because the Anderson Estate's failure to respond was caused by excusable neglect. The Court will grant the Motion to Strike in part and deny in part. The Court will not strike the Notice of Completion of Briefing. The Court construes the Motion to Strike as a request for an extension of time to respond to the Motion for Summary Judgment. The Court

believes that counsel for the Anderson Estate -- Shannon Robinson -- has pushed the bounds of excusable neglect to its limits, as the only reason he offers for not responding is that he knew there was going to be a new scheduling order and thought the deadline to respond would be set out in the next scheduling order.   Moreover, the Court is bound to adjudicate motions for summary judgment on their merits, and the Court is not certain it can properly perform that task without the Anderson Estate's response.   The Court will thus grant the Anderson Estate an extension of time to respond to the Motion for Summary Judgment.

## FACTUAL BACKGROUND

On June 20, 2009, Stephanie Anderson was working at a Denny's Restaurant at the intersection of Coors Boulevard and Iliff Street in Albuquerque, New Mexico.   See Amended Complaint for Wrongful Death ¶ 21, at 4, filed August 27, 2012 (Doc. 28)("Amended Complaint").   Defendants Denny's, Inc., Barreras Enterprises, Inc., Frank H. Barreras, June R. Barreras, and Judith A. Barreras own the restaurant.   See Amended Complaint ¶ 11, at 3. Defendants Jose Humberto Melgar-Cabrera, Marvin Antonio Aguilar-Lopez, and Pablo de Leon Ortiz entered the Denny's Restaurant where Anderson was working, armed with "an AR-15 rifle and handguns and [with the] intent . . . to commit an armed robbery" of the Denny's Restaurant; Anderson died as a result of this incident.   Amended Complaint ¶ 16, at 4.   The Anderson Estate argues that the Denny's, Inc., Barreras Enterprises, F. Barreras, J.R. Barreras, and J.A. Barreras caused Anderson's death, through failing to properly train personnel on emergency procedures, failing to implement adequate security measures for Anderson, failing to exercise due care of Anderson, and willfully ignoring the foreseeability of the crime which took place on June 20, 2009.   See Amended Complaint ¶¶ 28-31, at 5-6.

- 2 -

## PROCEDURAL BACKGROUND

The Anderson Estate is bringing a suit for wrongful against Denny's, Inc., Barreras Enterprises, F. Barreras, J.R. Barreras, and J.A. Barreras, alleging that their "intentional act or omission proximately caused Stephanie Anderson's death."   Amended Complaint ¶ 34, at 6.   On July 13, 2012, the Anderson Estate and Denny's, Inc. filed a Joint Status Report, which proposed a discovery deadline of January 4, 2013.   See Joint Status Report, filed July 13, 2012 (Doc. 13). At the initial scheduling conference on July 27, 2012, the Court accepted the parties' deadline for discovery and set a deadline for dispositive motions for November 1, 2012.   See Order Adopting Joint Status Report and Provisional Discovery Plan at 1, filed July 31, 2012 (Doc. 21); Scheduling Order at 2, filed July 31, 2012 (Doc. 20).   The Scheduling Order did not provide a deadline for parties to respond to dispositive motions; the Court typically does not include such deadlines in scheduling orders.   See Scheduling Order at 1-3.   After the scheduling conference, the Honorable Gregory B. Wormuth, United States Magistrate Judge, held a scheduling conference to determine when the settlement conference should be held.   Denny's, Inc., made it clear that it would not be willing to settle, or would be willing to settle only for a de minimums amount, until the Court ruled on its yet unfiled Motion for Summary Judgment based on its lack of franchisor liability.   Mr. Robinson said he was still gathering information but would probably add information about the franchisee.   See Clerk's Minutes from Proceedings Before the Honorable Gregory B. Wormuth: Scheduling Conference, taken Aug. 9, 2012 at 1-2, filed Aug. 10, 2012 (Doc. 26).   Apparently in response to the discussion at the scheduling conference, on August 27, 2012 Mr. Robinson filed the Amended Complaint adding Barreras Enterprises, F. Barreras, J.R. Barreras, and J.A. Barreras (collectively, "the Barreras Defendants") as Defendants.   See

Amended Complaint at 1.   On September 30, 2012, the parties vacated the Scheduling Order because of the addition of new claims against the Barreras Defendants, and the Court ordered the Scheduling Order vacated.   See Stipulated Order Vacating Scheduling Order at 1, filed Sept. 30, 2012 (Doc. 39).   Thus, at the time when Denny's, Inc. filed its Motion for Summary Judgment, there were no scheduling deadlines in effect.

Denny's, Inc. filed a motion for summary judgment on October 26, 2012, arguing that it does not owe a duty to Barreras Enterprises or to Barreras Enterprises' employees "to safeguard the work premises from the criminal acts of third parties," and that the Court should thus dismiss the Anderson Estate's claims against Denny's, Inc.   Motion for Summary Judgment at 2.   As of November 26, 2012, the Anderson Estate had not responded to the Motion for Summary Judgment.   See Notice of Completion of Briefing at 2.

Denny's, Inc. filed a Notice of Completion of Briefing of Denny's Inc. Motion for Summary Judgment on November 27, 2012.   The Anderson Estate moves the Court to strike the Notice of Completion of Briefing.   The Anderson Estate asserts that the Notice of Completion of Briefing is "improvident."   Motion to Strike ¶ 7, at 2.   The Anderson Estate asserts that Paul Maestas, counsel for the Barreras Defendants "has given notice by e-mail on November 26, 2012 that he has not received a copy of the Motion for Summary Judgment and became aware of its filing when the Notice of Briefing Completion was filed."   Motion to Strike ¶ 8, at 2.   The Anderson Estate has since forwarded a copy of the Motion for Summary Judgment to Mr. Maestas. See Motion to Strike ¶ 9, at 2.   The Anderson Estate states that Denny's, Inc. has refused to allow it an extension of time to respond to the Motion for Summary Judgment.   See Motion to Strike ¶ 10, at 2.   The Anderson Estate moves to strike the Notice of Briefing Completion "until a

- 4 -

Response is filed by Plaintiff and the new parties Barreras and Barreras Enterprises."   Motion to Strike ¶ 11, at 2.

Denny's, Inc. opposes the Anderson Estate's Motion to Strike.   <u>See</u> Response in Opposition to Motion to Strike Notice of Completion fo [sic] Briefing on Summary Judgment filed by Denny's, Inc., filed December 3, 2012 (Doc. 45)("Response").   Denny's, Inc. asserts that Mr. Maestas' November 26 electronic mail transmission stating that he had not received a copy of the "response to the motion or a copy of the reply," was referring to him having not received the Anderson Estate's response, and was not a statement indicating that he had not received a copy of the Motion for Summary Judgment.   Response at 2 (citing Electronic Mail Transmission from Paul Maestas to <u>srdist17@aol.com</u>, re: Denny's Inc. et al. v. Estate of Stephanie Anderson, No. CIV 1:12-605 JB/GBW, sent November 26, 2012 at 1:58 p.m., filed December 3, 2012 (Doc. 45-1)).   Denny's, Inc. asserts that the Anderson Estate "[i]ndisputably" received a copy of the Motion for Summary Judgment, as it was "electronically notified by the Court of the Motion filing and simply failed to file a timely response."   Response at 2.   Denny's, Inc. argues that the "Court must evaluate whether Plaintiff has demonstrated excusable neglect which would warrant, under the circumstances, this Court allowing for an extension of time in which to file a Response." Response at 2.   Denny's, Inc. contends that the Anderson Estate has not demonstrated excusable neglect, and that the Court should, thus, deny the Motion to Strike and rule on the Motion for Summary Judgment without the Anderson Estate's response.   <u>See</u> Response at 2.   Denny's, Inc. points out that, under D.N.M.LR-Civ 7.4(a), the Anderson Estate had fourteen calendar days to respond to the Motion for Summary Judgment.   <u>See</u> Response at 3.   Denny's, Inc. asserts that the Anderson Estate has offered no evidence which would support granting it an extension of time to

respond on the grounds of excusable neglect, which Denny's asserts is the only grounds on which the Anderson Estate may be allowed to respond to the Motion for Summary Judgment after the fourteen calendar days have passed.  See Response at 3 (citing Fed. R. Civ. P. 6(b)).  Denny's, Inc. points out that the Anderson Estate has not made any effort "to explain why Plaintiff could not meet the fourteen day time period or otherwise provide this Court with some explanation as why counsel was not aware of the filing of the Motion."  Response at 3.  Denny's, Inc. argues that overlooking the electronic transmission of the Motion for Summary Judgment on October 26, 2012, does not meet the standard of excusable neglect, as "'mere inadvertence, ignorance of the rules, or mistake construing the rules do not usually constitute excusable neglect.'"  Response at 3 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd., 507 U.S. 380, 392 (1993)).  Denny's, Inc. argues that excusable neglect is demonstrated only where "injustice would otherwise result," and that oversight is not sufficient to meet this standard.  Response at 3 (citing Thompson v. E.I. Dupont de Numours & Co., 76 F.3d 530, 534 (4th Cir. 1996)).  Denny's, Inc.'s main argument is that the Anderson Estate has not provided any rationale or evidence which would allow the Court to find that Anderson Estate's failure to respond was excusable neglect.  See Response at 4.

The Anderson Estate filed a Memorandum in Support of Motion to Strike on January 4, 2013 (Doc. 53)("Memo. in Support").  The Anderson Estate asserts that it has not yet taken discovery in this matter.  Memo. in Support at 2.  The Anderson Estate asserts that it desires to take a deposition of Arthur Boudakian, a regional director of franchise operations for Denny's, Inc., who provided information regarding Denny's, Inc.'s brand standards and procedures, upon which, in part, Denny's, Inc. bases its Motion for Summary Judgment.  See Memo. in Support ¶¶

4-5, at 2; id. at 2-3.   The Anderson Estate argues that, under Ciup v. Chevron USA, Inc., 1996-NMSC-062, 122 N.M. 537, 928 P.2d 263, Denny's, Inc. may be liable as a franchisor for Anderson's death.   See Memo. in Support at 3.   The Anderson Estate states that it plans to file a response to the Motion for Summary Judgment.   See Memo. in Support at 3.

The Court held a hearing on January 7, 2013.   See Transcript of Hearing, taken January 7, 2013 ("Tr.").[1]   The Court stated that it is inclined to deny the Motion to Strike.   See Tr. at 3:14-21 (Court).   The Court stated that, under the Federal Rules of Civil Procedure, the Anderson Estate should have responded to the Motion for Summary Judgment with an affidavit or declaration that demonstrated that it lacked the facts essential for its opposition.   See Tr. at 3:25-4:15 (Court).   The Court noted, however, that under the United States Court of Appeals for the Tenth Circuit's law, it must still judge the Motion for Summary Judgment on the merits, which is difficult to do without the Anderson Estate's response.   See Tr. at 4:20-5:1 (Court).   The Court expressed that the Tenth Circuit may not approve of an order granting summary judgment where a plaintiff did not respond, but had filed other pleadings late and not in the proper form.   See Tr. at 5:2-12 (Court).   The Court thus stated that it is inclined to deny the Motion to Strike, but will also allow the Anderson Estate to respond to the Motion for Summary Judgment, because the Court must determine the Motion for Summary Judgment on the merits.   See Tr. at 5:18-6:1 (Court).

The Anderson Estate informed the Court that it could withdraw the Motion to Strike if the Court so desired.   See Tr. at 6:23-24 (Robinson).   The Anderson Estate asserted that the Denny's, Inc. franchise agreement references procedural standards, which the Anderson Estate has not been able to review.   See Tr. at 7:17-20 (Robinson).   The Anderson Estate argued that it would need to

_____

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

see those procedural standards to properly respond to the Motion for Summary Judgment.   See Tr. at 7:22-8:1 (Robinson).   The Anderson Estate pointed out that the Denny's Restaurant is located in a high crime area.   See Tr. at 8:2-3 (Robinson).   The Anderson Estate thus argued that "there is a level of inquiry that's not facetious," which it could undertake, and the Anderson Estate asserted that controlling New Mexico case law could be dispositive of its claims against Denny's, Inc., and thus argued that "for the Court to be informed about how to handle this motion it's important for plaintiff to file a response and produce some discovery as to those particular items that are referred to in" the Motion for Summary Judgment.   Tr. at 8:9-23 (Robinson).

The Anderson Estate apologized for not following the proper procedure regarding the Motion for Summary Judgment.   See Tr. at 8:24-9:1 (Robinson).   Mr. Robinson stated that he was confused when the scheduling order was "rerouted."   Tr. at 9:1-4 (Robinson).

The Court inquired of Denny's, Inc. what its position is regarding the Anderson Estate's offer to withdraw the Motion to Strike.   See Tr. at 9:7-11 (Court).   Denny's, Inc. conceded that it would be very helpful for the Anderson Estate to depose Mr. Boudakian, but asserted that Mr. Boudakian's deposition "basically satisfies what we believe to be the law in this area in that Denny's has no control over the operations of the restaurant."   Tr. at 9:16-22 (Hatcher). Denny's, Inc. asserted that, because Anderson was not an employee, and the Denny's Restaurant was located in a high crime area, Denny's, Inc. was confident that it would prevail on a Motion for Summary Judgment.   See Tr. at 9:22-10:3 (Hatcher).   Denny's, Inc. asserted that, had the Anderson Estate requested more discovery pursuant to rule 56(d), the Court likely would have granted that motion, because "for a full and complete response he would probably need to depose Mr. [Boudakian]."   Tr. at 10:8-17 (Hatcher).   Denny's, Inc. stated that, if the Court allows the

Anderson Estate to file a response, Denny's, Inc. will make Boudakian available for a deposition. See Tr. at 10:18-24 (Hatcher).   Denny's, Inc. asserted that it nevertheless opposes the Court allowing the Anderson Estate to file a response and requests the Court to rule on the Motion for Summary Judgment without a response.   See Tr. at 11:8-11 (Hatcher).   Denny's, Inc. asserted that Mr. Robinson "can't claim that he didn't receive a mailing" of the Motion for Summary Judgment.   Tr. at 11:19-22 (Hatcher).   Denny's, Inc. asserted that excusable neglect is a "rigorous standard" and that filing a request for an extension of time after the response deadline has passed does not rise to the level of excusable neglect.   Tr. at 12:3-12 (Hatcher).   Denny's, Inc. pointed out that the Anderson Estate has offered no reason why it did not respond within the time frame allowed.   See Tr. at 12:13-24 (Hatcher).   Denny's, Inc. further asserted that deposing Boudakian would be costly for it.   See Tr. 13:1-8 (Hatcher).   Denny's, Inc. stated that it would prefer the Court to rule on whether the Anderson Estate has demonstrated excusable neglect justifying its request for an extension of time, but also stated that it is happy to make Boudakian available for the Anderson Estate to depose.   See Tr. at 13:13-14:1 (Hatcher).   Denny's, Inc. stated that, if the Court allows the Anderson Estate to respond, then the parties would likely need forty-five or sixty additional days to conduct discovery and for Denny's, Inc. to reply.   See Tr. at 14:2-14 (Hatcher).   The Barreras Defendants agreed that they would need more than thirty-days to respond to anything the Anderson Estate files regarding the Motion for Summary Judgment. See Tr. at 14:18-21 (Maestas).

The Court then inquired of the Anderson Estate what its position is on converting the Motion to Strike into a motion for extension of time to respond to the Motion for Summary Judgment.   See Tr. at 14:22-15:4 (Court).   The Anderson Estate stated that conversion is

acceptable to it.  See Tr. at 15:5-6 (Robinson).  The Court thus stated that it would deny the Motion to Strike and treat it as a motion for extension of time to file a response to the Motion for Summary Judgment.  See Tr. at 15:7-9 (Court).  Regarding Denny's, Inc.'s arguments that the Anderson Estate's delay was not because of excusable neglect, the Anderson Estate asserted that it was confused regarding the current procedural posture of the Court, and expressed that it thought a second scheduling order would be drafted and was thus confused about when the current deadlines fell.  See Tr. at 15:14-22 (Robinson).

> THE COURT:        Tell me why you didn't file a timely response.   What's the reason that you did not do so?
>
> MR. ROBINSON:      Well, I -- when we were working on the scheduling order originally I misunderstood the fact that the new scheduling order was going to be drafted, and so that's why I thought that the deadline to respond[] would be set out in the next scheduling order, and so that's -- that was just my misunderstanding procedurally of where we were at.
>
>           I was making efforts to get the pleading intact with all the parties, and I thought that the motion for summary judgment was then going to be delayed, and I was wrong.
>
> THE COURT:        Well does you -- Mr. Hatcher's speculating that you never saw the motion for summary judgment or didn't see it in a timely way.   Is that correct?   Or did you see when it was filed.
>
> MR. ROBINSON:      No, I saw it, Judge, and I did put some thought behind it, and I really thought that the scheduling order was now going to be in a new ballpark, and I was just wrong about that.

Tr. at 15:11-16:5.  The Court inquired whether Mr. Robinson did not see the Motion for Summary Judgment when it was filed, and Mr. Robinson responded that he had seen it, but that he thought a new scheduling order was going to change the deadlines for him.  See Tr. at 15:23-16:5 (Court, Robinson).  Mr. Robinson stated that he thought a new scheduling order would change the dates for responses to summary judgments to be filed.  See Tr. at 16:6-17:11 (Court, Robinson).

THE COURT:          But I guess I'm wondering what it was about the scheduling order that you thought changed the time for you to respond to a motion?

MR. ROBINSON:      Well it states times when summary judgments are filed and dates when they're other things that are going to happen, and that was my misunderstanding, Judge.

THE COURT:          So you thought -- So you thought that the scheduling order changed the dates for responding to a motion for summary judgment?

          I guess I'm looking at the stipulated order vacating the scheduling order, and when that was entered what did you think?   That was entered in September. They filed a motion for summary judgment -- I don't have that briefing in front of me.

MR. HATCHER:          October 26th Judge.

THE COURT:          Okay.   So they vacate the scheduling, there's a stipulated order vacating the scheduling order in September, about the 25th, and then Denny's files its [M]otion for [S]ummary [J]udgment in October.   When you saw that -- If you saw the [M]otion for [S]ummary [J]udgment, which you said you did, what did you think?   What was going through your head?

MR. ROBINSON:      I thought, of course, I realize[d] discovery had to be done . . . .

Tr. at 16:6-17:2.  The Court inquired of Mr. Robinson what his thought process was when he saw the Motion for Summary Judgment was filed, and Mr. Robinson stated that he thought the "dates for when motions for summary judgment were to be filed was -- had been changed, and that was my mistake."   Tr. at 16:20-17:6 (Court, Robinson).   The Court inquired how changing the deadline for when motions for summary judgment were to be filed could have impacted Mr. Robinson's thinking, and Mr. Robinson stated that he thought that Denny's, Inc. filed the Motion for Summary Judgment early, and that different deadlines were in place.   See Tr. at 17:7-14 (Court, Robinson).   The Anderson Estate asserted that it is not making facetious arguments, and that there are standards, procedures, manuals and other evidence which it has not obtained which would be relevant to its arguments.   See Tr. at 17:18-1 (Robinson).   The Anderson Estate

- 11 -

asserted that its right to move forward could not "be waived by a mistake."   Tr. at 18:2-3 (Robinson).

The Court stated that Mr. Robinson's position was pushing "excusable neglect pretty hard."   Tr. at 18:4-5 (Court).   The Court also noted, however, that it is a harsh remedy to proceed to summary judgment without the benefit of an opposition.   See Tr. at 18:8-12 (Court).   The Court stated that, if it grants the motion for an extension of time, then the parties would likely need more than thirty-days to prepare for a hearing on the Motion for Summary Judgment.   See Tr. at 18:18-23 (Court).

Denny's, Inc. requested the Court to review Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd. in deciding whether to grant the Anderson Estate additional time.   See Tr. at 19:17-23 (Hatcher).   Denny's, Inc. asserted that the Supreme Court does not view mere inadvertence, ignorance of the rules, or a mistake construing the rules as excusable neglect.   See Tr. at 19:24-20:1 (Hatcher).   The Court inquired what excusable neglect could be, under that interpretation, and Denny's, Inc. stated that, "under the circumstances, I'm not sure."   Tr. at 20:2-6 (Court, Hatcher).   The Court stated that most cases explain what excusable neglect is not, rather than defining what excusable neglect is, making the Court's role in this matter particularly difficult.   See Tr. at 20:22-21:14 (Court).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

(f)   **Motion to Strike.**   The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    (1)    on its own; or

(2)      on motion made by a party either before responding to the
pleading or, if a response is not allowed, within 21 days after
being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Wright and Arthur Miller have recognized, however,

that such motions are not favored and, generally, should be denied:

> The district court possesses considerable discretion in disposing of a Rule 12(f)
> motion to strike redundant, impertinent, immaterial, or scandalous matter.
> However, because federal judges have made it clear, in numerous opinions they
> have rendered in many substantive contexts, that Rule 12(f) motions to strike on
> any of these grounds are not favored, often being considered purely cosmetic or
> "time wasters," there appears to be general judicial agreement, as reflected in the
> extensive case law on the subject, that they should be denied unless the challenged
> allegations have no possible relation or logical connection to the subject matter of
> the controversy . . . .

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d.

ed. 2004)(footnotes omitted).   Accord Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, 2009

WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, C.J.)(citing Scherer v. U.S. Dep't

of Educ., 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished))[2]("While motions to strike are

generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").

"Allegations will not be stricken as immaterial under this rule unless they have no possible

bearing on the controversy."  Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486

JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken

---

[2] Burget v. Capital W. Sec., Inc.is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See
10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for
their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not
binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an
unpublished opinion . . .  has persuasive value with respect to a material issue in a case and would
assist the court in its disposition, we allow a citation to that decision."   United States v. Austin,
426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that Burget v. Capital W. Sec., Inc. has
persuasive value with respect to a material issue, and will assist the Court in its disposition of this
memorandum opinion and order.

Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)).   "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed."   Friends of Santa Fe Cnty. v. LAC Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting Carter-Wallace, Inc. v. Riverton Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969))(internal quotation marks omitted).   Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.   "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."   5C Wright & Miller, supra, § 1382, at 458-60 (footnotes omitted).

Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.   Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."   Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).   Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning,  J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1998)(unpublished table decision))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike.").   "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"   Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting

- 14 -

Fed. R. Civ. P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored." Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599, at *5 (quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Egan, J.))(internal quotation marks omitted)).   "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'" Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710, at *3 n.6 (10th Cir. 1998)(unpublished table decision)).

For example, in Skyline Potato, Co., Inc. v. Hi-Land Potato, Co., Inc., No. CIV 10-698, 2012 WL 6846386 (D.N.M. Dec. 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading and did not pertain to either party's legal defenses or arguments -- the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial.   See 2012 WL 6846386, at *6.   Similarly, in Great Am. Ins. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500 (D.N.M. Aug. 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because were neither pleadings nor irrelevant.   See 2012 WL 3656500, at *18.   In Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike a motion to dismiss because rule 12(f) applies only to pleadings, and not to a motion to dismiss.   See 2007 WL 5685131, at *18

## RELEVANT LAW REGARDING EXTENSIONS OF TIME

Rule 6(b) provides:

(b)      **Extending Time.**

(1)      **In General.**   When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A)      with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B)      on motion made after the time has expired if the party failed to act because of excusable neglect.

(2)      **Exceptions.**   A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b).   "[A] finding of excusable neglect under Rule 6(b)[(1)(B)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period."   In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1290 (10th Cir.1974).   See Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required." (quoting Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1305 (5th Cir. 1985))). "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)."   Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir. 2005).

In determining whether a movant has shown excusable neglect, a court should consider the circumstances, including: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the judicial proceedings; (iii) the reason for the delay, including

whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.  See Schupper v. Edie, 193 F. App'x 744, 746 (10th Cir. 2006)(unpublished)(citing Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd., 507 U.S. 380 (stating factors in the context of Bankruptcy Rule 9006(b)); Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1494 (10th Cir. 1995)(applying the Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd. excusable neglect factors to the rule 6(b) context)).   The United States Court of Appeals for the Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis.  See Hamilton v. Water Whole Int'l Corp., 302 F. App'x 789, 798 (10th Cir. 2008)(unpublished)(citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir.  2004)(analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal)).

The Court has previously applied the factors set forth in Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd. to find that another party, also represented by Mr. Robinson, demonstrated excusable neglect when it requested leave to file a late response to a motion to compel.  See Skyline Potato, Co., Inc. v. Tan-O-On Mktg., Inc., No. CIV 10-0698 JB/RHS, 2012 WL 3150375 (D.N.M. July 28, 2012)(Browning, J.).   In Skyline Potato, Co., Inc. v. Tan-O-On Mktg., Inc., the Court noted that the danger of prejudice to the opposing party, Hi-Land Potato, was low, because it had the opportunity to respond to Tan-O-On's arguments at a hearing.   The Court also noted that the delay was not long, as Tan-O-On sought leave to file a response fifteen days after a response was due, and the Court was not required to reschedule its hearing on the motions to compel because of Tan-O-On's late response.   Tan-O-On provided a valid reason for its delay in responding, even though its ability to timely respond was in its control: Tan-O-On was trying to work out discovery disputes in a complex case involving multiple parties.   See 2012 WL

3150375, at *3.   On the other hand, in <u>Scull v. Mgmt. & Training Corp.</u>, 2012 WL 1596962

(D.N.M. May 2, 2012)(Browning, J.), the Court did not grant a plaintiff's request for an extension

of time to name an expert witness against a defendant, when the plaintiff asserted that he had

waited to name an expert witness until a second defendant joined the case, because, before the

second defendant entered the case, a scheduling order was in effect and the plaintiff should have

known that he would need to name an expert witness against the defendant already in the case.

<u>See</u> 2012 WL 1596962, at *8.   The Court determined that the plaintiff was seeking "relief from

his own disregard" for the deadline.   2012 WL 1596962, at *8.   "Despite his knowledge that

[Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass

without naming expert witnesses against [Defendant] MTC."   2012 WL 1596962, at *8.

Regarding the defendant who entered the case at a later date, however, the Court allowed the

plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull

to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he

had not yet had the opportunity to engage in discovery against PNA as he had against MTC."

2012 WL 1596962, at *9.   The Court also noted that not naming an expert witness "is a high price

to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not

have determined the need for an expert witness until after PNA entered the case.   2012 WL

1596962, at *9.   In <u>Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK)</u>, 275 F.R.D. 544

(D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when

his reason for missing a scheduling deadline was that soon after his son's wedding, his

father-in-law developed a tumor in his chest and the lawyer handled arranging his father-in-law's

medical care, and only after the lawyer returned to his work did he realize that a deadline passed.

<u>See</u> 275 F.R.D. 549-550.   The Court noted that the lawyer could have avoided missing the

deadline had he not left his work until the last minute, just before his son's wedding, but found that

the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not

his own inadvertence.  275 F.R.D. 549-550.  In <u>West v. N.M. Taxation & Revenue Dept.</u>, No.

CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court

allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment

in part because the plaintiff's inability to respond was caused by the difficulty she experienced

attempting to obtain depositions with certain defense witnesses, and thus was not her fault, and in

part because cross-motions on summary judgment are particularly helpful for the Court:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and
> promote reasonable settlements.  In some cases, it allows the Court to determine
> that there are no genuine issues for trial and thereby avoid the expenses associated
> with trial.   The Court prefers to reach the merits of motions for summary judgment
> when possible.

2010 WL 3834341, at **4-5.   On the other hand, in <u>Liles v. Washington Tru Solutions, LLC</u>, No.

CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied

a plaintiff's request for additional time to respond to a defendant's motion for summary judgment,

when the only rationale the plaintiff provided was that its counsel's "family and medical

emergencies" precluded the plaintiff from timely responding.   2007 WL 2298440, at *2.

## LAW REGARDING FAILURE TO RESPOND TO A MOTION

"Failure of a party to file and serve a response in opposition to a motion within the time

prescribed for doing so constitutes consent to grant the motion."   D.N.M.LR-Civ. 7.1(b).   The

court cannot, however, grant a motion to dismiss or a motion for summary judgment based solely

on plaintiff's failure to respond and must consider the merits of the motion.   See <u>Issa v. Comp</u>

<u>USA</u>, 354 F.3d 1174, 1177-78 (10th Cir. 2003)("[E]ven if a plaintiff does not file a response to a

motion to dismiss for failure to state a claim, the district court must still examine the allegations in

the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."); Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002)(holding that a district court cannot grant an unopposed motion for summary judgment unless the moving party has first met its burden of production and demonstrates it is legally entitled to judgment under rule 56). The requirement that a court consider the merits before granting an unopposed motion to dismiss "consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.'"   Issa v. Comp USA, 354 F.3d at 1177-78 (quoting Mobley v. McCormick, 40 F.3d at 340).   Similarly, when a party fails to respond to a motion for summary judgment, a district court can properly grant the motion only "if the motion demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Reed v. Bennett, 312 F.3d at 1196.   Failure to respond does "not relieve the court of its duty to make the specific determination required by Fed. R. Civ. P. 56(c)." Reed v. Bennett, 312 F.3d at 1196.   Accordingly, although the local rules provide that a party's failure to respond to a motion for summary judgment is deemed consent to the Court granting the motion, the Court will nonetheless rule on motions for summary judgment on the merits, and generally does not grant dispositive motions on procedural defaults alone.   See D.N.M.LR-Civ 7.1(b)("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."); Sawyer v. USAA Ins. Co., No. CIV 11-0523 JB/CG, 2012 WL 6005766, at *23 (D.N.M. Nov. 9, 2012)(Browning, J.)("It is important that Sawyer filed no written response to BCBSKC's motions and, under the rules, is deemed to have consented to the Court granting the motion. . . .   The Court nonetheless carefully considered the merits of this motion and held a hearing, at which Sawyer presented no evidence.").

## ANALYSIS

The Court will not strike the Notice of Completion of Briefing.  The Court will, nonetheless, construe the Motion to Strike as a motion for extension of time.   The Court will grant the Anderson Estate an extension of time to respond to the Motion for Summary Judgment.

## I.     THE COURT WILL NOT STRIKE THE NOTICE OF COMPLETION OF BRIEFING.

Under rule12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   By its express language, rule 12(f) applies only to material contained in a "pleading."   The Federal Rules of Civil Procedure includes within "pleadings" that may be filed: a complaint, an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a)(1-7).   Although the Federal Rules of Civil Procedure state what pleadings are permitted, but do not define pleadings, the pleadings allowed under the rules state the respective parties' positions regarding the basis of the lawsuit.   Specifically, the pleadings provide the parties' factual assertions -- which are the only factual assertion on which a court may rely in ruling on a motion to dismiss and on a ruling for judgment on the pleadings -- bases for relief and defenses.   Under the rules, a party may therefore move to strike a pleading that pleads an insufficient defense, and redundant, immaterial, impertinent, or scandalous matter, as such information is either immaterial or improper for a court to consider at the pleading stage. Here, the Notice of Completion of Briefing sets forth no facts or arguments regarding Denny's, Inc.'s position.   Rather, the Notice of Completion of Briefing informs the Court that the time allowed under the Federal Rules of Civil Procedure for the Anderson Estate to respond to the Motion for Summary Judgment has passed, and the Anderson Estate did not file a response.   See

Notice of Completion of Briefing at 1.   The Notice of Completion of Briefing is not a pleading, and is not irrelevant.   Accord Applied Capital, Inc. v. Gibson, No. CIV 05-0098 JB/ACT, 2007 WL 5685131, at *7 (D.N.M. Sept. 27, 2007)(Browning, J.)("Under rule 7(a), motions and other papers are not pleadings.")(citing Fed. R. Civ. P. 7(a)).

"Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."   2 James Moore, Milton I. Shadurupdates & Mary P. Squiers, Moore's Federal Practice § 12.37[2], at 12-128 (3d ed. 2012).   See Ysais v. N. M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (same).   The Court has generally disfavored motions to strike, and has refused to strike matters that are not pleadings.   In Ysais v. N.M. Judicial Standard Comm'n, where the plaintiff argued that the Court should dismiss the defendants' motion to dismiss, contending that it was "frivolous and baseless," the Court concluded that it could not properly strike the motion, as "[i]t complie[d] with the local rules, and it [was] not a 'pleading' subject to a motion to strike." 616 F. Supp. 2d at 1191.   Similarly, in Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike, because rule 12(f) applies only to pleadings, and not to a motion to dismiss, notwithstanding the plaintiff's argument that the Court should strike the motion as there had already been a default judgment entered against the plaintiff and he did not therefore have standing to move to dismiss the complaint.   See 2007 WL 5685131, at *18.   In Great Am. Ins. Co. v. Crabtree, the Court denied the plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were not pleadings and were not irrelevant.   See 2012 WL 3656500, at *18.   In deciding not to strike the attached exhibits, the Court noted:

If the Court struck from the record everything it did not consider on a motion, it

would spend a lot of time polishing the record.  Also, with the Court being paperless and everything appearing on CM/ECF, it is unclear what the procedural difference in the modern computer world is between striking some information and ignoring it.

Great Am. Ins. Co. v. Crabtree, 2012 WL 3656500, at *18.   Accordingly, the Court will not strike the Notice of Completion of Briefing.

## II.    THE COURT WILL GRANT THE ANDERSON ESTATE AN EXTENSION OF TIME TO RESPOND TO THE MOTION FOR SUMMARY JUDGMENT.

The Court will allow the Anderson Estate an extension of time to respond to the Motion for Summary Judgment.  The Court recognizes that inadvertence or ignorance of the rules is not excusable neglect, but Mr. Robinson has been honest with the Court in his explanation, and his explanation provides some rationale for his failure to respond.   Mr. Robinson's explanation, is -- as best the Court can generously construe it -- that he thought the original Scheduling Order set a deadline to respond to the Motion for Summary Judgment, that the Court vacated that deadline when it vacated the original Scheduling Order, that he needed to get all parties into this case, and that he needed discovery.   While this rationale is concerning, the Court understands Mr. Robinson's explanation for why he did not respond to the summary judgment motion to be that, because the deadlines and settings contained in the Court's original Scheduling Order were vacated as a result of the filing of the Amended Complaint and ultimately because of the entry of the Stipulated Order Vacating Scheduling Order, that he erroneously thought the Court will take up to the Motion for Summary Judgment at a later time in conjunction with the new settings and deadlines to be imposed once the franchisees were in the case.  The Court is concerned that, because Mr. Robinson is a seasoned attorney who has practiced in federal court in this state for many years, that he perhaps has frozen some of his understanding of the procedures and practices in federal court based on prior rules and practices that have evolved through the years.

- 23 -

In the past, it appears that some of the judges, including magistrate judges, in this district gave dates for responses for motions for summary judgment.   This practice may continue, as the discovery calculator that the Court uses for setting deadlines includes deadlines for responses and replies.   The Court does not use these, because the local rules also set deadlines for filing these responses and many times the parties agree voluntarily to exclude the response and reply deadlines.   See D.N.M.LR-Civ 7.4(a) (providing a fourteen calendar day deadline for a response to be filed, after a party is served with a motion, and that a moving party has fourteen days to file a reply after service of a response is received).   Mr. Robinson may have had this practice in mind when he thought the Court had vacated the deadlines.   He apparently thought the Court vacated the deadlines to file the response to the Motion for Summary Judgment.

The Court has some trouble calling Mr. Robinson's mistake inadvertence, as that word is commonly understood.   Rather, his conduct was intentional.   He did not respond because he did not think he needed to respond.

The Court also has problems calling Mr. Robinson's mistake one of ignorance.   He knew about the Motion for Summary Judgment and knew he needed to respond, but thought he did not need to do so immediately.   Again, he was not so ignorant of the particular rule as mistaken about the limited effect of vacating the Scheduling Order.   The Court is also not comfortable saying that Mr. Robinson misconstrued the rules.   He, instead, misunderstood the limited effect of vacating the original Scheduling Order.   He knew that he needed to respond, so he did not misconstrue the rules.

Moreover, the Court is bound by the Tenth Circuit's requirement that the Court rule on motions for summary judgment on their merits, and the Court is not allowed to grant a motion for summary judgment because of a procedural default alone.   See Reed v. Bennett, 312 F.3d at 1196

(stating that a party's failure to respond to a motion for summary judgment does "not relieve the court of its duty to make the specific determination required by Fed. R. Civ. P. 56(c)").

The Court fully realizes it is being generous to Mr. Robinson's excuses.   But the Supreme Court's explanation of what is excusable neglect leaves very little neglect that is excusable. Many appellate cases explain what is not excusable, as they affirm this district judge's enforcement of the rules; few appellate cases have the opportunity to explain excusable neglect, because the district court is liberal to the neglecting party, the issue is rarely raised on appeal.   Mr. Robinson was negligent and barely excusable.   In the end, however, the Court believes it falls outside of the Supreme Court's harsh definition of what is not excusable neglect.   While the Supreme Court's formulation of what is not excusable neglect leaves little room for excusable neglect, the Tenth Circuit's four-factor test is more forgiving and generous, and Mr. Robinson fairs better under that analysis.   Although "it is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)," Quigley v. Rosenthal, 427 F.3d at 1238, the factors set forth in Pioneer Inv. Servs. Co. v. Brunswick Assoc.'s Ltd. weigh, at least in part, in favor of allowing the Anderson Estate additional time to respond to the Motion for Summary Judgment.

The Court does not believe that Denny's, Inc., will suffer much prejudice if the Anderson Estate is allowed additional time to respond to the Motion for Summary Judgment.   In fact, Mr. Robinson's excuse makes it plain that a default judgment here would be more technical than necessary to prevent prejudice to Denny's, Inc.   Although Denny's, Inc. will undoubtedly incur costs associated with making Boudakian available for a deposition, Denny's, Inc. admitted that it probably should allow the Anderson Estate to take this deposition, and would have incurred those costs had the Anderson Estate timely responded to the Motion for Summary Judgment.   See Tr. at

10:14-17 (Hatcher)("[F]or a full and complete response he would probably need to depose Mr. Boudakian."). Thus, allowing the Anderson Estate additional time does not cause Denny's, Inc. financial hardship. Further, Denny's, Inc. has expressed confidence in the merits of its Motion for Summary Judgment and has not indicated that additional time for the Anderson Estate to respond would constitute an unfair advantage to the detriment of Denny's, Inc. The Anderson Estate's delay was not very long: the Anderson Estate filed the Motion to Strike, which the Court construes as a request for additional time, approximately thirty days after the Motion for Summary Judgment was filed -- approximately fifteen days after the Anderson Estate's should have responded. See Motion for Summary Judgment at 1; Motion to Strike at 1. The Court has previously determined that a delay of this length is not so long as to warrant denying a request for additional time. See Skyline Potato, Co., Inc. v. Tan-O-On Mktg., Inc., 2012 WL 3150375, at * 3 ("While there was an approximate fifteen-day delay in filing a response . . . . [t]hat timeframe is approximately the same that would have played out had Tan-O-On Marketing filed a response and then had the Hi–Land Potato Parties filed a reply brief."). On the other hand, the Court believes that the Anderson Estate possessed the ability to respond in a timely manner, and the reason for its delay was within its own control. Mr. Robinson expressed that he did not timely respond because he was confused about the current deadlines and he expected the Court to issue a new scheduling order. See Tr. at 15:14-19 ("I misunderstood the fact that the new scheduling order was going to be drafted, and so that's why I thought that the deadline to respond[] would be set out in the next scheduling order."). While it is correct that the Court vacated the scheduling order in effect on September 30, 2012, the Court does not know why that would change the Anderson Estate's responsibility under D.N.M.LR-Civ 7.4(a), which required the Anderson Estate to respond to the Motion for Summary Judgment within fourteen calendar days. See Stipulated Order Vacating

Scheduling Order, filed September 30, 2012 (Doc. 39). In <u>Scull v. Mgmt. & Training Corp.</u>, the Court found, in a similar situation, that a plaintiff's disregard for a deadline was not sufficient grounds to grant an extension of time for naming expert witnesses. <u>See</u> 2012 WL 1596962, at **3, 8. Yet, the Court does not believe that Mr. Robinson acted with bad faith -- he seems to have been confused, and not attempting to purposely procure more time for an illicit reason, such as to conduct additional discovery -- and his absence of bad faith is all the more evident because Mr. Robinson had not even begun discovery when the Notice of Completion of Briefing was filed. <u>See</u> Memo. in Support at 2. Had Mr. Robinson been attempting to manipulate deadlines to create a buffer of more time for discovery, he most likely would have begun at an earlier date. He has a good cause for discovery and more time to respond without the problems he created; he did not need to miss a deadline to obtain more discovery and more time. <u>See</u> Tr. at 10:8-12 (Hatcher)("[I]f Mr. Robinson had, prior to the deadline for the response passing . . . filed the motion under [r]ule 56 for further discovery [] I don't think there is a question that either the Court would grant that or I would stipulate to it."); <u>id.</u> at 17:18-18:3 (Robinson)(stating that, from the Motion for Summary Judgment, it "is apparent [] that there is standards and procedures, manuals that are not apparent to us. There's no way we can answer this question of what those two entities['] relationship was . . . . "). Finally, Mr. Robinson has been honest. Instead of taking the possibly easier route, practically invited by Denny's Inc., that he did not see the Motion for Summary Judgment, he honestly stated he saw it and then provided a more confusing explanation.

Moreover, the one who gets most hurt in the default, if the Court does not allow a response, is the Court. The Anderson Estate's failure to timely respond does not relieve the Court of its duty under rule 56. <u>See</u> <u>Reed v. Bennett</u>, 312 F.3d at 1196 (holding that a party's failure to respond to a motion for summary judgment "not relieve the court of its duty to make the specific

determination required by Fed. R. Civ. P. 56(c).").   The Court does not believe that it can properly adjudicate whether a genuine issue of material fact exists between these parties without the benefit of the Anderson Estate's response.   As the Court has said in a similar, although not identical, situation:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and promote reasonable settlements.   In some cases, it allows the Court to determine that there are no genuine issues for trial and thereby avoid the expenses associated with trial.   The Court prefers to reach the merits of motions for summary judgment when possible.

West v. N. M. Taxation & Revenue Dept., 2010 WL 3834341, at **4-5.  The prejudice that Denny's, Inc. would suffer from the Anderson Estate's response is not great, the Anderson's Estate's delay was not severe, and Mr. Robinson appears to have acted in good faith.   Although his inadvertence of ignorance pushes the limits of excusable neglect, the Court does not believe it can decide well the issues in the Motion for Summary Judgment on the merits without the benefit of the Anderson Estate's response.   Accordingly, the Court will grant the Anderson Estate an extension of time to respond to the Motion for Summary Judgment.

**IT IS ORDERED** that Motion to Strike Notice of Completion of Briefing on Summary Judgment Filed by Denny's Inc., filed November 27, 2012 (Doc. 44), is granted in part and denied in part.   The Court will not strike the Notice of Completion of Briefing, filed November 26, 2012 (Doc. 43).   The Court will allow the Plaintiff Estate of Stephanie Anderson an extension of time to respond to the Motion for Summary Judgment of Denny's, Inc., filed October 26, 2012 (Doc. 40).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Shannon Robinson
Albuquerque, New Mexico

  *Attorney for the Plaintiff*

Scott P. Hatcher
Hatcher & Tebo, P.A.
Santa Fe, New Mexico

  *Attorneys for the Defendant Denny's Inc.*

Paul Maestas
Maestas & Suggett, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendants Barreras Enterprises, Inc., Frank H. Barreras, June R. Barreras, and Judith A. Barreras*